## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

**HELEN ROSSELLÓ**, *et al.*,

      Plaintiffs,

      v.

**AVON PRODUCTS, INC.**,

      Defendant.

Civil No. 14-1815 (JAG/BJM)

### REPORT AND RECOMMENDATION

Plaintiffs Helen Rosselló, María Villeneuve, and Wanda Vázquez bring this putative collective action against Avon Products, Inc. ("Avon") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Puerto Rico Law No. 379 of May 15, 1948 ("Law 379"), 29 L.P.R.A. § 271 *et seq.* Compl., Docket No. 1. Plaintiffs allege that Avon, their current or former employer, misclassified them, and others similarly situated, as employees exempt from the protections afforded by the FLSA and Law 379 and, as a result, failed to provide overtime pay or a meal period. *Id.* Plaintiffs moved for conditional class certification. Docket No. 13 ("Mot."). Avon opposed, plaintiffs replied, and Avon surreplied. Docket Nos. 24 ("Opp."), 31 ("Reply"), 34. The motion was referred to me for a report and recommendation. Docket No. 18. Also before me is Avon's motion to strike the declarations supporting plaintiffs' conditional certification motion. Docket No. 36. Plaintiffs opposed the motion to strike, and Avon replied. Docket Nos. 40, 45. For the reasons below, I **deny** Avon's motion to strike and recommend that plaintiffs' motion for conditional certification be **granted in part**.

### BACKGROUND

Avon is a New York corporation engaged in the sale and distribution of beauty products. Compl. ¶¶ 5, 7; Echeandía Decl. ¶¶ 4–5, Docket No. 24-1. Its products are sold to the public by non-employee independent sales representatives ("ISRs"). Echeandía Decl. ¶ 7; Echenique Dep. 8:23–9:4, Docket No. 31-1. In Puerto Rico, Avon's operations are divided

into a number of districts, each managed by a District Sales Manager ("DSM"). Rosselló currently works in Puerto Rico as a DSM; Villeneuve and Vázquez were employed in the same capacity until 2012 and 2014, respectively. Rosselló Decl. ¶¶ 1–2, Docket No. 13-2; Villeneuve Decl. ¶ 1, Docket No. 13-3; Vázquez Decl. ¶¶ 1–3, Docket No. 13-4; Echeandía Decl. ¶¶ 5–6. DSMs are salaried employees tasked with, among other things, recruiting, training, and motivating ISRs within their individual districts in order to meet various per-district sales and other goals set by Avon for each of 26 two-week "campaigns" throughout the year. Rosselló Decl. ¶ 4; Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5; Reply, Ex. B, Docket No. 48-1; Echeandía Decl. ¶ 7; Echenique Dep. 11:7–12:11.

Plaintiffs allege that Avon failed to fully compensate them and other DSMs in Puerto Rico for overtime, which they regularly worked, and also failed to provide a designated meal period. Compl. ¶¶ 45–46. Avon failed in these respects, plaintiffs claim, because it improperly classified DSMs as employees exempt from the requirements of the FLSA and Law 379. *Id.* ¶¶ 47, 49. Plaintiffs now move for conditional certification of a class comprising all current and former DSMs who were employed by Avon in Puerto Rico at any time in the last six years, who were classified as exempt, and who worked more than eight hours per day or 40 hours per week during their employment. Mot., Ex. 1, Docket No 13-1.[1]

## DISCUSSION

### I.     Wage-and-Hour Laws and the Administrative Exemption

#### A.     The FLSA

Under the FLSA, employers are generally required to pay their employees overtime wages, at the rate of time-and-a-half, for hours worked in excess of 40 during a single week. 29 U.S.C. § 207(a)(1). Some white-collar employees, including, as relevant here, those who work in an "administrative capacity," are exempt from the overtime-pay requirement. *Id.*

---

[1] The precise wording employed by plaintiffs is: "All present and former AVON District Sales Managers from November 6, 2008"—six years before plaintiffs filed their complaint—"to the present who were classified as exempt employees and worked more than eight (8) hours daily and/or forty (40) hours weekly." Mot., Ex. 1. Though plaintiffs' proposed notice is not explicitly limited to DSMs who worked in Puerto Rico, I read in such a limitation for reasons explained below.

§ 213(a)(1).[2] Consistent with the statute's remedial purpose, this and other exemptions must be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir. 1997) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The FLSA does not itself define the term "administrative," instead committing to the Department of Labor ("DOL") the task of clarifying through regulations the exemption's scope. 29 U.S.C. § 213(a)(1); *John Alden*, 126 F.3d at 7–8. These regulations, which are "given controlling weight unless found to be arbitrary, capricious, or contrary to the statute," *Cash v. Cycle Craft Co.*, 508 F.3d 680, 683 (1st Cir. 2007) (quoting *John Alden*, 126 F.3d at 8), define "employee employed in a bona fide administrative capacity" to mean any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . .;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). "Primary duty," in turn, means "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700.

### B.    Law 379

Law 379 parallels and supplements the FLSA. Employees are entitled to time-and-a-half overtime wages for hours not only in excess of 40 per week, but also in excess of eight per day. 29 L.P.R.A. §§ 271, 273–74.[3] Employers also must provide employees with a meal period, and an employer who requires or permits an employee to work during his meal

---

[2] Avon makes clear that it intends ultimately to rely on the administrative exemption, rather than any other of the FLSA's numerous exemptions. Opp. 2. In my analysis of plaintiffs' conditional certification motion, I do not consider other defenses that Avon might conceivably assert.

[3] The time-and-a-half rate applies to employers operating in an industry covered by the FLSA; for other employers, a double rate applies. 29 L.P.R.A. § 274.

period must compensate him at double his regular hourly rate. *Id.* § 283. As under the FLSA, administrators are exempt. *Id.* § 288(1). The parameters of this exemption are identical to those of its FLSA equivalent. *Velázquez Fernandez v. NCE Foods, Inc.*, 405 F. Supp. 2d 179, 195 (D.P.R. 2005); *López Vega v. Francisco Vega Otero, Inc.*, 3 P.R. Offic. Trans. 243, 245–48 (P.R. 1974); P.R. Regs., D.T.R.H. Reg. 7082 (2005).

## II.    Collective Action Standard

The FLSA permits employees to bring suit against their employer on their own behalf and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike conventional class actions under Federal Rule of Civil Procedure 23, in which absent class members are bound by the judgment unless they affirmatively remove themselves from the class, FLSA collective actions require potential plaintiffs to affirmatively "opt in." 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives consent in writing to become a party."); *Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 359 (D. Me. 2010). The statue does not define "similarly situated" or specify how courts are to determine whether a collective action is appropriate, and neither the Supreme Court nor the First Circuit has weighed in on the subject. *Prescott*, 729 F. Supp. 2d at 363. Other circuits have sanctioned various approaches but stopped short of mandating any particular procedure. *Id.* at 363–64 (collecting cases). Absent clear guidance, district courts in this circuit, and the majority of district courts nationwide, have adopted a "two-tiered" approach. *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 & n.5 (D. Me. 2011) (collecting cases).[4]

At the first stage, the court determines whether plaintiffs have shown that they and the putative class members "have similar (not identical) job duties and pay provisions . . . and are victims of a common policy or plan that violated the law." *Perez v. Prime Steak*

---

[4] Law 379 provides that employees may bring suit in their own names and those "of other employees who are in similar circumstances." 29 L.P.R.A. § 282. Plaintiffs allege in their complaint that the standards and procedures for proceeding collectively under Law 379 and the FLSA are essentially identical, Compl. ¶ 14, and their conditional certification motion apparently presumes the same. Because Avon makes no suggestion to the contrary, I assume, for present purposes, that the two statutes are indeed consonant in this respect.

*House Rest. Corp.*, 959 F. Supp. 2d 227, 231 (D.P.R. 2013) (quoting *Prescott*, 729 F. Supp. 2d at 363–64); *see also, e.g.*, *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012) (referring to this initial stage as "conditional certification"). The conditional certification stage occurs "earlier in a case, before substantial discovery," *Prescott*, 729 F. Supp. 2d at 364, and the court makes its preliminary determination "under a 'fairly lenient standard,'" *Perez*, 959 F. Supp. 2d at 230 (quoting *O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 249 (D. Mass. 2006)). Plaintiffs need make only a "modest" or "minimal" factual showing that there exists a class of similarly situated employees. *Johnson*, 802 F. Supp. 2d at 234.[5] Given this light burden, the court's analysis "typically results in conditional certification." *Prescott*, 729 F. Supp. 2d at 364 (quoting *Hipp*, 252 F.3d at 1218) (internal quotation marks omitted).

If plaintiffs are able to carry their burden, the court authorizes notice of the pending action to members of the putative class, who may then opt in. *Id.* at 233–34; *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989) (holding that courts have discretion to authorize sending notice to potential class members in an FLSA collective action). The court may also facilitate notice by allowing or ordering discovery designed to identify employees within the similarly situated class. *Hoffmann-La Roche*, 493 U.S. at 170.[6]

At the close of discovery and following the arrival of opt-in plaintiffs, the defendant employer may initiate the second stage by moving to "decertify" the collective action. *Id.*

---

[5] The court's inquiry often focuses solely on "the pleadings and any affidavits which have been submitted." *Prescott*, 729 F. Supp. 2d at 364 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). However, courts regularly consider additional evidence, such as job descriptions, recorded corporate policies, and deposition testimony. *See, e.g.*, *Chin v. Tile Shop, LLC*, 2014 U.S. Dist. LEXIS 151960, at *14–16 (D. Minn. Oct. 27, 2014); *Jacob v. Duane Reade, Inc.*, 2012 WL 260230, at *6 (S.D.N.Y. Jan. 27, 2012); *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010); *Murton v. Measurecomp, LLC*, 2008 WL 5725631, at *5 (N.D. Ohio June 9, 2008).

[6] *Hoffmann-La Roche* addressed the propriety of court-facilitated notice in the context of a collective action under the Age Discrimination in Employment Act, which expressly incorporates the FLSA's collective action provision. 493 U.S. at 167–68; *see* 29 U.S.C. § 626(b). The Court's holding applies with equal force to collective actions under the FSLA proper. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) (Sotomayor, J.).

With the benefit of more substantial evidence, the court makes a comparatively searching "factual determination as to whether there are similarly-situated employees who have opted in." *Id.* (quoting *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008)). Factors relevant to that determination include "(1) disparate factual employment settings of the individual plaintiffs; (2) the various defenses available to each defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

## III.    Avon's Motion to Strike

In order to define the constellation of evidence under consideration, it is necessary, before reaching the merits of plaintiffs' motion, to address Avon's objections to plaintiffs' three unsworn declarations. Avon moves to strike the declarations on three grounds: they are filled, Avon says, with statements that (1) are impermissibly conclusory, (2) concern matters not appropriately within the scope of lay testimony, and (3) are not based upon personal knowledge.[7]

The parties disagree, as an initial matter, as to the evidentiary standard applicable to declarations in support of a conditional certification motion. Avon would have the court import from the summary judgment context the rule that declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4), while plaintiffs urge that a less demanding standard is appropriate.

---

[7] Avon also argues that Villeneuve's and Vázquez's declarations should be disregarded because they are substantially identical. Although it is true that the two declarations are mostly boilerplate, plaintiffs "are not required to make a lengthy detailed declaration in their own words or without the assistance of counsel." *McNelley v. ALDI, Inc.*, No. 1:09 CV 1868, 2009 WL 7630236, at *4 (N.D. Ohio Nov. 17, 2009). Moreover, it is in plaintiffs' interests, given their burden, to present declarations that describe their duties and other facts more or less identically. *See Matthews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 WL 2591497, at *5 (E.D. Mich. Aug. 24, 2009) ([T]he uniformity that ALC derides is in the Court's view a substantial indicator in favor of the plaintiffs being similarly situated. . . . [T]he fact that [multiple] plaintiffs can agree on a single formulation as accurately describing their job duties is a strong indicator that certification is appropriate.").

Though there is support for both positions, the better-reasoned cases are on plaintiffs' side. *Compare, e.g.*, *Richards v. Computer Scis. Corp.*, 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004) (applying Rule 56 standard), *with, e.g.*, *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006) (rejecting Rule 56 standard). As the court in *White* explained, there are two reasons not to impose the relatively stringent summary judgment standard at this stage. First, blithe adoption of that standard would "fail[] to take into account that the plaintiff has not yet been afforded an opportunity, through discovery, to test fully the factual basis for his case." *White*, 236 F.R.D. at 368. Second, the standard's rigor is uniquely appropriate to declarations offered at summary judgment. In that context, requiring admissible evidence "is logical: there is a possibility that trial will be avoided by the result, so courts should decide the motions based on evidence that would be admissible at trial." *Id.* When a court is confronted with a conditional certification motion, in contrast, "[t]here is no corresponding possibility of final disposition," and discovery will proceed regardless of the motion's resolution. *Id.* Numerous courts have adopted *White*'s reasoning or discussed it with approval. *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760–61 (N.D. Tex. 2013) (collecting cases).

Like those courts, I find *White*'s analysis persuasive and so will not require that plaintiffs' evidence be essentially trial-ready. Consequently, Avon's objections that certain statements are inadmissible because they set forth legal conclusions, rather than facts, and because they address matters beyond plaintiffs' competence, are meritless, and the motion to strike is denied as to those statements.[8] The objections to an asserted lack of personal

---

[8] Which is not to say that the objected-to statements are relevant. *See Lee*, 980 F. Supp. 2d at 761 n.2 ("[A]t this stage, the objections raised by [defendant] go to the weight of the evidence, and not its admissibility."). Plaintiffs variously claim that they were "misclassified," "erroneously classified," and "wrongly classified" by Avon as exempt. Rosselló Decl. ¶¶ 2, 7; Villeneuve Decl. ¶¶ 1,5; Vázquez Decl. ¶ 8. Avon is correct that these assertions go to the merits of plaintiffs' underlying claim, and they play no part in my determination that conditional certification is appropriate. The same is true of Rosselló's assertion that DSMs do not engage in "direct sales and promotional work to the public," Rosselló Decl. ¶ 5, which, in any case, seems at least partially targeted at the FLSA's exemption for "outside salesmen," rather than the administrative exemption

knowledge, however, require further discussion. As Avon notes, even courts which decline to apply Rule 56 in full insist that declarations at the conditional certification stage be based on personal knowledge. *E.g.*, *Lee*, 980 F. Supp. 2d at 762; *White*, 236 F.R.D. at 369.

In their declarations, plaintiffs repeatedly purport to describe not only their own duties and employment conditions, but also those of all other DSMs in Puerto Rico. Villeneuve and Vázquez assert that all DSMs performed the same set of enumerated tasks. Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5. Each plaintiff asserts, either directly or indirectly, that Avon classified all DSMs as exempt. Rosselló Decl. ¶¶ 2, 7; Villeneuve Decl. ¶¶ 3, 5; Vázquez Decl. ¶ 8. Each asserts that Avon's "production" or "performance requirements" necessitated that all DSMs work hours that would constitute overtime for a non-exempt employee. Rosselló Decl. ¶ 6; Villeneuve Decl. ¶ 4; Vázquez Decl. ¶ 7. And each asserts that no DSM was provided by Avon with overtime compensation. Rosselló Decl. ¶ 7; Villeneuve Decl. ¶ 5; Vázquez Decl. ¶ 8.

Frustratingly, none of the declarations contains an overarching, unequivocal avowal of personal knowledge. Villeneuve and Vázquez do, however, both preface their description of DSMs' duties with the phrase "to my knowledge." Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5. Avon claims that, by using this phrase, they "implicitly admit that they have no actual knowledge of the veracity of the information they swear to be true." Docket No. 36, at 5. Though the phrase is somewhat ambiguous, I cannot agree; in context, it is better read as an affirmative assertion of personal knowledge. *See SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 135 (2d Cir. 2009) ("[A] statement made 'to my knowledge,' unlike a statement made 'upon information and belief,' is sufficient to assert personal knowledge.").

Personal knowledge may be contextually inferred, and courts at the conditional certification stage often presume an employee's familiarity with his employer's general practices and the general experiences of other employees. *See Lee*, 980 F. Supp. 2d at 764 ("[I]t is reasonable to infer at this stage that [plaintiffs] had personal knowledge of the

ultimately at issue here. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. §§ 541.500, .503.

employment conditions of other Service Coordinators based upon their own observations and experiences during their employment."); *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 65 (E.D.N.Y. 2012) ("[I]t is reasonable to infer that . . . employees would have first-hand knowledge of [their employer's] employee policies and practices by virtue of their tenure [with employer]."); *Reyes v. AT & T Mobility Servs. LLC*, 759 F. Supp. 2d 1328, 1334 (S.D. Fla. 2010) ("[I]t is reasonable to assume at this stage that the affiants would have learned what other Retail Account Executives did during the normal course of their employment, such as during discussions with other employees, visiting other stores, reviewing emails from co-workers or reviewing material distributed by Defendant."); *White*, 236 F.R.D. at 369 ("[I]t is reasonable to infer from the evidence submitted that [plaintiffs], as employees of [defendant], would have learned during the normal course of their employment how the company operates and what the company's policies were."); *Davis v. Valley Hospitality Servs., LLC*, 372 F. Supp. 2d 641, 653 (M.D. Ga. 2005) ("[C]ommon sense dictates that if an affiant is an employee of a company, she has personal knowledge of events and circumstances that occurred at the company within her sphere of observation.").[9]

Here, it is reasonable to infer, based on their positions and experience, that plaintiffs have personal knowledge of the duties generally imposed by Avon upon DSMs in Puerto Rico, Avon's general policy of classifying those DSMs as exempt, and the hours generally worked by other DSMs.[10] Avon's motion to strike is therefore denied in full.

---

[9] In *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010), cited liberally by Avon, the court disregarded for lack of personal knowledge declarations purporting to describe the duties of a nationwide class of employees, pointing out that the declarants had no personal experience outside a single state. *Id.* at 928–29. *Colson* is distinguishable in that plaintiffs in this case describe the experiences only of other DSMs in Puerto Rico. While employees may not be expected to learn, in the general course of employment, how their extra-state counterparts behave, it is far less of a leap to suppose that one Puerto Rico DSM knows what another is expected to do. Any suggestion in *Colson* that this kind of personal knowledge cannot be inferred—a suggestion that would stand in stark contrast to the cases already cited—is unpersuasive.

[10] It is arguably somewhat less reasonable to infer personal knowledge of the hours worked by other DSMs than to infer personal knowledge of other DSMs' duties and Avon's broad exemption policy. The issue is, however, ultimately moot. As will be discussed, plaintiffs need not show that other DSMs worked overtime; it is sufficient to show that Avon classified all DSMs as exempt.

## IV.     Conditional Certification

Plaintiffs have made the requisite modest factual showing that they are similarly situated to members of the putative class, and conditional certification is therefore warranted. The evidence before the court is sufficient, at this preliminary stage, to demonstrate that members of the proposed class were uniformly subjected by Avon to a single policy—that is, their allegedly improper classification as exempt employees—and that they performed similar, if not identical, duties.

### A.        Similarly Situated Analysis

There is little question plaintiffs have made a modest factual showing that Avon classified all Puerto Rico DSMs as exempt—they assert as much in their declarations. Avon, moreover, apparently concedes that it has such a uniform policy; its opposition trumpets its confidence "that its DSMs in Puerto Rico are properly classified as exempt." Opp. 2. This, of course, does not end the matter. As Avon notes, plaintiffs cannot carry their burden merely by offering evidence of common classification. *See Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *9 (E.D. Mich. Mar. 23, 2012) ("[I]t is not enough, even at the notice stage, to allege lead and opt-in plaintiffs are similarly situated because of the defendant's common scheme to misclassify them as exempt."); *Colson*, 687 F. Supp. 2d at 927 (similar); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (similar). In misclassification cases especially, "'similarly situated' must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt," a question that turns on the character of work performed. *Shipes*, 2012 WL 995362, at *10. This point, in itself, is unobjectionable. But Avon's insistence that plaintiffs premise their motion on nothing more than the existence of a DSM-wide classification practice is simply untenable in light of the available evidence. Plaintiffs have made an adequate showing that they and members of the proposed class perform similar duties.

Each submitted an unsworn declaration under penalty of perjury describing the work

performed by DSMs in Puerto Rico and Avon's classification of DSMs for wage-and-hour law purposes. Rosselló avers that in her current position as a DSM she "spend[s] the majority of [her] time engaged in . . . recruiting persons to become [ISRs] . . . and then informing these independent contractors about [Avon's] product line." Rosselló Decl. ¶ 4. Villeneuve and Vázquez describe their duties—and, as discussed, the duties of other DSMs—similarly, though in greater detail, stating that they spend "the vast majority of time in the field recruiting and training [ISRs] and recruiting potential new hires to become [ISRs], filling out pre-formatted forms and processing the new [ISRs], attending weekly webinars and/or teleconferences regarding [Avon's] sales goals, and reading material provided by [Avon]." Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5.

Plaintiffs also attached to their reply two DSM job descriptions, apparently prepared by Avon and signed by Vázquez, and the deposition of Division Sales Manager María Echenique, taken in a separate action brought by Vázquez against Avon. The job descriptions, consistent with plaintiffs' declarations, state that a DSM's "purpose" and "general function" is to "[r]ecruit, train, and motivate" ISRs in order to meet Avon's per-district sales objectives. Reply, Exs. B–C.[11] Echenique's testimony likewise jibes with plaintiffs' account of their duties. She testified that DSMs spend "maybe" 50 percent of their time recruiting new ISRs, with the rest of their time divided between motivating inactive ISRs, informing ISRs about Avon's catalog and sales goals, holding sales conferences for the ISRs, and meeting with and reviewing the results of Leaders—specialized ISRs with the power to recruit others. Echenique Dep. 42:10–44:12, 50:1–:6.

Contrary to Avon's contention, plaintiffs have provided substantially more relevant evidence than was present in *Shipes*, *Colson*, and *Morisky*. In *Shipes*, the plaintiff, seeking to certify a class of all exempt employees, relied solely on her complaint, which explicitly alleged that the proposed class members performed various duties, and her bare-bones

---

[11] One of the job descriptions, dated July 31, 2004, lists the relevant position as "Zone Manager." Reply, Ex. C, Docket No. 48-2. Avon formerly referred to DSMs by other titles, including District Zone Manager. Vázquez Decl. ¶ 2; Echenique Dep. 10:23–11:2, 13:10–15:6.

affidavit, which asserted only that the defendant company employed others who worked overtime. 2012 WL 995362, at *11. The court contrasted the plaintiff's showing with that made, successfully, in *Wlotkowski v. Michigan Bell Telephone Co.*, 267 F.R.D. 213 (E.D. Mich. 2010), where 35 affidavits made clear that all class members "held the same job title, performed similar duties, and shared the same primary job duty." *Shipes*, 2012 WL 995362, at *11. Though plaintiffs have offered far fewer declarations than in *Wlotkowski*, they have offered far more than in *Shipes*, and their declarations establish exactly those facts the *Shipes* court found wanting.

In *Colson*, the plaintiff submitted three declarations, which the court found, under the Rule 56 standard already rejected here, almost entirely inadmissible. *See* 687 F. Supp. 2d at 928–29. Stripped of their offending portions, the declarations together described only the experience of a single former employee in a single office, *id.* at 929, and thus did not show that all similarly titled employees nationwide "performed similar tasks," *id.* at 928. As discussed, plaintiffs' declarations are admissible at this stage, and affirmatively state exactly what was found lacking in *Colson*—that plaintiffs and potential opt-ins share similar duties. The *Colson* court also declined to consider a purported job description furnished by the plaintiff, noting that it explicitly described a position in Mexico, while the proposed class was limited to employees holding that position in the United States. *Id.* at 929. There is no such infirmity with the job descriptions furnished by plaintiffs here; they plainly cover the DSM position in Puerto Rico. *See* Reply, Exs. B–C.

Finally, in *Morisky*, the plaintiffs failed completely to describe any job responsibilities shared by all class members, vaguely referring only to a common connection to electricity production. 111 F. Supp. 2d at 498. More specificity was required especially given the breadth of the proposed class, which encompassed all employees allegedly misclassified as administrative, regardless of specific job titles. *See id.* at 496–97. Plaintiffs in this case have named specific tasks performed by all members of the putative class, and the class includes only DSMs.

In addition to arguing generally that plaintiffs have failed to provide sufficient evidence, Avon lodges two further objections to the particulars of plaintiffs' showing. It argues, first, that inconsistencies in plaintiffs' declarations illustrate that not even they, let alone other Puerto Rico DSMs, perform similar duties. Rosselló, Avon notes, asserts that she spends the majority of her time recruiting ISRs and informing them about Avon's products, while Villeneuve and Vázquez assert that they, and all DSMs, spend the majority of their time recruiting *and training* ISRs, in addition to several other tasks. Rosselló Decl. ¶ 4; Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5. At this stage, however, this slight inconsistency— to the extent that plaintiffs indeed describe different duties, rather than essentially the same duties slightly differently—is not fatal. Plaintiffs must show only that the putative class members' duties are similar, not that they are identical. *Perez*, 959 F. Supp. 2d at 231. Plaintiffs' declarations, Avon's job descriptions, and Echenique's testimony show that all DSMs are similarly responsible for recruiting ISRs and overseeing them in some capacity.

Avon's second argument is more complex. It contends that even if DSMs have the same general job description, the precise manner in which they perform their duties varies widely. Collective action is therefore inappropriate, Avon says, because the court will ultimately need to "engage in a fact-intensive, case-by-case examination of the duties performed by *each* class member" to determine whether any particular DSM is properly classified as exempt. Opp. 14–15. Though not without some surface appeal, this argument also fails. Plaintiffs' evidence shows that they and all Puerto Rico DSMs perform similar duties. In an attempt to negative plaintiffs' declarations and other submissions, Avon attached to its opposition several declarations of its own, which purportedly illustrate that, in practice, DSMs do such different work that collective evaluation of their proper classification is impossible. *See* Ponce Decl., Docket No. 24-2; Velázquez Decl., Docket No. 24-4; Freire Decl., Docket No. 25-1. But these declarations show no such thing; if anything, in fact, they tend to support plaintiffs' position that DSMs all have similar duties.

To be sure, the declarations emphasize that the manner in which DSMs perform their

duties varies. Suzzette Ponce Bobonis ("Ponce"), Janet Velázquez Santiago ("Velázquez"), and Ana Freire Rodríguez ("Freire"), Avon employees currently or formerly employed as DSMs, all assert that each individual DSM's assigned district is, in effect, her own business, and that DSMs have ample discretion in how exactly they allocate their time between the several tasks necessary to meet their particular district's needs. Ponce Decl. ¶¶ 5–9, 11; Velázquez Decl. ¶¶ 2–3, 8–11; Freire Decl. ¶¶ 3–4, 10, 14. However, their descriptions of the *duties themselves* are largely consistent with plaintiffs' own descriptions and other supporting materials. *See Betancourt v. Maxim Healthcare Servs., Inc.*, No. 10 C 4763, 2011 WL 1548964, at *9 (N.D. Ill. Apr. 21, 2011) ("[D]efendant's affidavits from its current employees do not, on their face, show conclusively that it is impossible or even imprudent to certify a class of similarly situated Recruiters . . . . To the contrary, defendant's affidavits seem to show that Recruiters throughout the company generally perform many of the same tasks, though arguably in various ways along a spectrum.").

Ponce, for example, speaks of DSMs' discretion to "customize[] the way they go about recruiting, training, coaching and developing [ISRs]," and to "develop and implement unique approaches to training and coaching" their ISRs. Ponce Decl. ¶¶ 5, 8. Though Ponce's declaration tends to show that DSMs have the flexibility to choose *how* to recruit and train ISRs, it does nothing to counter plaintiffs' claim that a significant part of every DSM's job involves the recruitment and training of ISRs—quite the opposite. *See* Rosselló Decl. ¶ 4; Villeneuve Decl. ¶ 2; Vázquez Decl. ¶ 5.[12] Velázquez and Freire assert that, as DSMs, they do not merely recruit ISRs, but are also responsible for "training," "developing," and "motivating" them. Velázquez Decl. ¶ 4; Freire Decl. ¶ 13. This distinction between recruitment and post-recruitment activities is apparently intended to distinguish Velázquez and Freire from Rosselló, who asserts simply that she spends the vast majority of her time

---

[12] Indeed, even if Ponce, a former DSM who subsequently held two supervisory positions enabling her to observe other DSMs in action, had stated that all DSMs exercise discretion in performing specific, enumerated tasks *other* than those listed by plaintiffs, her declaration still would not undercut plaintiffs' general position that DSMs are similarly situated with respect to job duties.

recruiting ISRs and informing them about Avon's products. Rosselló Decl. ¶ 4. As discussed, however, the fact that Rosselló does not explicitly state that she trains or otherwise supervises her ISRs does not mean, at this stage, that her duties are not similar to those of DSMs who do. And the ostensibly fuller catalog of duties offered by Avon's declarants is entirely in accord with—that is, similar, if not identical, to—the accounts of Villeneuve and Vázquez, the written job descriptions furnished by plaintiffs, and Echenique's testimony.[13]

Finally, Ponce targets Rosselló's account of the precise way she spends her time, denying that she spends that "vast majority" of her time on recruitment. Ponce Decl. ¶ 10; *see* Rosselló Decl. ¶ 4. Because Ponce admits that she and all DSMs spend *some* time recruiting ISRs, her repudiation of Rosselló's "vast majority" language is relevant, if at all, only as to whether recruitment is a DSM's *primary* duty. *See* 29 C.F.R. § 541.200(a); *Witteman v. Wis. Bell, Inc.*, No. 09-CV-440-VIS, 2010 WL 446033, at *2 (W.D. Wis. Feb. 2, 2010) ("Although defendant devotes most of its brief to an argument that there are numerous differences among the potential class members, it says surprisingly little about the reasons those alleged differences are relevant for the purpose of determining whether plaintiffs are exempt from the FLSA, which is the only difference that matters."). But the DOL regulations specifically provide that a mechanical comparison of the hours an employee spends on each of his several duties is not, by itself, sufficient to determine which of those duties is "primary." 29 C.F.R. § 541.700. For a particular duty to be primary, it is neither necessary nor sufficient that it take up the majority of the employee's time; the ultimate determination requires scrutiny of "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Avon has not, with Ponce's declaration or

---

[13] Ponce also asserts: "[Recruitment] will not give a DSM all the results that she needs. It is only part of what needs to be done in a campaign." Ponce Decl. ¶ 10. Like those of Velázquez and Freire, this statement is insufficient to show that Rosselló is not similarly situated to Villeneuve and Vázquez, or that plaintiffs are not similarly situated to other DSMs in Puerto Rico. Moreover, Ponce is speaking not only for herself, but for DSMs in general; implicit in her statement is the proposition that, to meet Avon's per-campaign goals, all DSMs must perform certain tasks. That, of course, is exactly what plaintiffs claim in seeking class certification.

any other evidence, provided any reason to doubt that individual DSMs' jobs, viewed holistically, are sufficiently similar in character to support conditional certification.

Avon relies on several cases that, given the discussion so far, are inapposite, unpersuasive, or both. In *Aguirre v. SBC Communications, Inc.*, 2006 WL 964554 (S.D. Tex. Apr. 11, 2006), the plaintiffs failed to make even a minimal factual showing that the putative class was similarly situated, resting entirely on the conclusory allegations in their complaint and motion for conditional certification. *Id.* at *6. That, of course, is not the case here; plaintiffs have provided affirmative evidence undiminished in force by Avon's own submissions. *Reich v. Homier Distributing Co.*, 362 F. Supp. 2d 1009 (N.D. Ind. 2005), involved the FLSA's exemption for loaders—employees who spend a substantial part of their time using their discretion to safely load merchandise onto trucks. *Id.* at 1013; *see* 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.5. The putative class comprised jack-of-all-trades "sales partners," some of whom were sometimes responsible for merchandise-loading. *Reich*, 362 F. Supp. 2d at 1011. The court denied conditional certification because there was no showing at all that the entire class actually performed loading duties. *Id.* at 1013–15. Here, plaintiffs have preliminarily shown that DSMs perform the same core duties; the question remaining in this case is whether those duties are administrative, and that question may be answered on a collective basis.

The court in *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004), considered a putative class of retail store managers and assistant managers who claimed that, contrary to their titles and formal job descriptions, they mainly performed low-level, distinctly non-managerial tasks, and were thus improperly classified as exempt "executives." *Id.* at 1271–75. Though the plaintiffs presented evidence that they each spent the majority of their time doing busywork, the defendant provided employee affidavits showing that the same was not true for other class members. *Id.* at 1273–74. The court concluded that determining whether individual class members were properly classified would turn on individualized proof to such a degree that a collective action was inappropriate. *Id.* at 1274–

75. *Holt* is distinguishable in terms of both the evidence presented and plaintiffs' theory of the case.

While in *Holt* the defendant's evidence controverted the plaintiffs' sweeping assertions that all managers mainly performed blue-collar tasks, Avon's employee affidavits, as discussed, do not show that DSMs perform duties other than those plaintiffs identify. Moreover, plaintiffs here do not acknowledge the administrative nature of the duties in their formal job descriptions but claim that, in practice, they perform mostly non-administrative tasks. They claim, rather, that their *official* duties—recruiting and training ISRs—are non-administrative. *See* Compl. ¶¶ 20–21, 24–25. This distinction necessarily affects the showing necessary to justify conditional certification; it is easier to show that employees with a common title are all expressly required to perform a common set of tasks than to show that those employees all go off-script in similar ways. *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 476 (S.D.N.Y. 2010) (discussing the different evidence required for challenges to official duties and claims that employees were unofficially required to perform non-exempt tasks); *Smallwood*, 710 F. Supp. 2d at 752 (same). Because the crux of plaintiffs' claim is that their core duties are non-administrative, all they need to show, at this stage, is that those duties are shared by all potential plaintiffs—and they have done so.

As in *Holt*, the plaintiff in *Mike v. Safeco Insurance Co. of America*, 274 F. Supp. 2d 216 (D. Conn. 2003), "expressly disavow[ed] [his] job description." *Id.* at 221. Finally, at issue in *Clausman v. Nortel Networks, Inc.*, IP 02-0400-C-M/S, 2003 WL 21314065 (S.D. Ind. May 1, 2003), was the FLSA's outside salesman exemption, which, under the DOL regulations then in effect, applied only to employees who spent at least 80 percent of their time making sales outside the office. *Id.* at *4. The plaintiff admitted that putative class members had discretion to decide how much time they spent on the road, and the court cited the need for individualized inquiries into work schedules as one reason for denying conditional certification. *Id.* at *2, *4. The evidence before the court also revealed that some class members personally finalized sales, while others did not, instead utilizing an outside

vendor; this, too, precluded conditional certification, since it was unclear whether some class members were technically salesmen within the meaning of the FLSA. *Id.* at *1, *4–5. Here, application of the administrative exemption does not strictly depend on the particulars of an employee's schedule. *See* 29 C.F.R. § 541.700. And though Avon has presented evidence that DSMs perform their duties in different ways, the identified distinctions do not affect whether the court will ultimately be able to determine collectively the exempt status of recruiting and training ISRs.

To the extent some or all of these decisions may be read to stand for the broader proposition that misclassification cases are presumptively unsuited for collective action, they are unpersuasive. It is true, as a general matter, that deciding the applicability of the administrative and other exemptions requires a fact-specific inquiry. *Morisky*, 111 F. Supp. 2d at 498. But, as many courts have recognized, "the need to examine the facts of an employee's work does not categorically preclude collective determination of exemption." *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 630 (E.D. Cal. 2009); *see, e.g.*, *In re Wells Fargo Wage & Hour Emp't Practices Litigation (No. III)*, No. H-11-2266, 2012 WL 3308880, at *27–29 (S.D. Tex. Aug. 10, 2012) (granting conditional certification despite defendant's appeal that individualized exemption analyses were required); *Indergit v. Rite Aid Corp.*, Nos. 08 CIV. 9361(PGG), 08 CIV. 11364(PGG), 2010 WL 2465488, at *9–10 (S.D.N.Y. June 16, 2010) (same); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *3–4 (D. Kan. Oct. 17, 2005) (same); *Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 4500, at *3–4 (S.D. Fla. Jan 3, 2005) (same).

Misclassification claims are eminently susceptible to collective proof where, as here, plaintiffs have preliminarily shown, the facts relevant to the exemption at issue are common to all class members. *See Indergit*, 2010 WL 2465488, at *10. To unduly restrict the availability of collective litigation in misclassification cases would be to contravene congressional intent. "The remedial nature of the FLSA and the purposes of Section 216

militate strongly in favor of allowing cases to proceed collectively." *Wells Fargo*, 2012 WL 3308880, at *24 (quoting *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008)) (internal quotation marks omitted); *see John Alden*, 126 F.3d at 7 (recognizing FLSA's remedial purpose). Plaintiffs have shown enough to proceed to the next stage of the collective action process.

### B.    " Aggrieved Individuals"

Avon argues that conditional certification should be denied because plaintiffs have failed to show that other DSMs worked overtime.[14] Some courts in this district and circuit have stated, without much elaboration, that plaintiffs seeking conditional certification must provide "a reasonable basis for crediting the assertion that aggrieved individuals exist." *Levecque v. Argo Mktg. Grp., Inc.*, 2015 WL 3672647, at *7 (D. Me. June 12, 2015); *Perez*, 959 F. Supp. 2d at 231; *Johnson*, 802 F. Supp. 2d at 234 (quoting *Albanil v. Coast 2 Coast, Inc.*, Civil Action No. H-08-468, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008)). But it is not entirely clear what, if anything, these courts had in mind by expressing this requirement. Though it is noted as an essential prerequisite for conditional certification in *Levecque* and *Johnson*, neither opinion contains any discussion specifically about whether aggrieved individuals were shown to exist. In *Perez*, to the extent the court conducted an "aggrieved individuals" inquiry at all, it was subsumed in a more general discussion of whether the proposed class members shared similar duties and were subjected to a common policy—questions already answered here. *See* 959 F. Supp. 2d at 231–32. It appears that, for these courts, the "aggrieved individuals" requirement is more nominal than operative.

Other courts, notably in the Southern District of Texas, have given the requirement

---

[14] Avon also suggests that plaintiffs have failed to show the existence of other DSMs, period, noting that they do not specify the size of the proposed class. True enough—but there is no question that there are at least *some* Puerto Rico DSMs other than plaintiffs themselves and the two Avon declarants currently so employed. One of those declarants notes that she is currently assigned to District 76. Friere Decl. ¶ 2. Ponce, currently a Field Operations Manager, was formerly employed as a DSM assigned to District 73. Ponce Decl. ¶ 3. It is reasonable to infer from these numbers that there are many other similarly situated DSMs.

some teeth, or at least examined it as a discrete factor in the larger "similarly situated" inquiry. *See Walker v. Hongua Am., LLC*, 870 F. Supp. 2d 462, 465, 467–68 (S.D. Tex. 2012); *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647, 649 (S.D. Tex. 2010); *Albanil*, 2008 WL 4937565, at *6. But many more make no mention of the need for plaintiffs to show anything beyond that they and potential opt-ins performed similar duties and were governed by a single policy or plan. *See, e.g.*, *Smallwood*, 710 F. Supp. 2d at 752; *Kress*, 263 F.R.D. at 627–28; *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819(GEL), 2006 WL 283971, at *3 (S.D.N.Y. 2006); *O'Donnell*, 429 F. Supp. 2d at 249. Avon has pointed to no case, and I am aware of none, denying conditional certification solely on the basis that the plaintiffs failed to show that all class members in fact regularly worked overtime.

In any event, Avon's argument rests on a premise I have rejected—that plaintiffs' assertions that other DSMs worked overtime are not based on personal knowledge. And even if plaintiffs lacked personal knowledge as to the precise hours worked by their colleagues, it would be enough that they have personal knowledge, perhaps more easily inferred, of Avon's allegedly improper exemption policy for DSMs, which necessarily implies that any DSMs who did work overtime did not receive time-and-a-half compensation. *See Walker*, 870 F. Supp. 2d at 467–68 (finding "aggrieved individuals" element satisfied where plaintiffs' affidavits established that class members "were not paid overtime").

Moreover, there should be no concern where, as here, the proposed class specifically consists only of employees who worked overtime during the relevant period. *See Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014) (finding competent evidence that putative class members regularly worked overtime but also noting that, regardless, "the court-supervised notice will specify that it applies only to loaders who worked over 40 hours a week during the relevant time frame"); *cf. Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 681–62 (D. Kan. 2004) ("Money Tree argues that class certification is inappropriate because whether each putative class member will have a meritorious claim under the FLSA will depend on whether the employee worked overtime

hours. The proposed class definition, however, only encompasses those employees who worked more than forty hours per week.").

### C.    Interest in Joining

Avon's final argument is that it is not enough to suppose that other DSMs *may* be interested in joining the suit. Plaintiffs, says Avon, must demonstrate *actual interest*, and they have not. Avon is correct that numerous courts have withheld conditional certification absent evidence that some putative class members desire to join. *Perez*, 959 F. Supp. 2d at 232 ("The Court joins district courts within the First Circuit, as well as numerous other district courts and the Eleventh [Circuit], in holding that a plaintiff must demonstrate that similarly situated employees are truly interested in joining the suit before the Court may grand conditional certification."); *Johnson*, 802 F. Supp. 2d at 237 (same; collecting cases); *O'Donnell*, 429 F. Supp. 2d at 250–51. At the same time, many other courts have declined to impose such a requirement. *See, e.g.*, *Shipes*, 2012 WL 99532, at *9; *Jesiak v. Fire Pros, Inc.*, 275 F.R.D. 242, 247 (W.D. Mich. 2011); *Lyons v. Ameriprise Fin., Inc.*, No. 10-503, 2010 WL 3733565, at *5 (D. Minn. Sept. 20, 2010); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002). For three reasons, I find this latter set of authorities persuasive and thus conclude that conditional certification is appropriate despite plaintiffs' failure to show that any other DSMs desire to join this suit.

First, as courts in this district and circuit have acknowledged, a hard-and-fast requirement that plaintiffs demonstrate opt-in interest risks creating "a 'chicken and egg' problem." *Perez*, 959 F. Supp. 2d at 232 n.4 (quoting *Johnson*, 802 F. Supp. 2d at 238); *see also Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991) (discussing "chicken and egg limbo" in context of larger "similarly situated" inquiry); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 406 (D.N.J. 1988) (same). Often, as here, a plaintiff moving for conditional certification hopes to obtain from the defendant the identities and contact information of every member of the proposed class; with this information in

hand, the plaintiff can disseminate court-approved notice, the purpose of which is to determine whether any class members want to join the suit. Given the point of seeking conditional certification, an interest requirement may be infeasible in many cases. Asking a plaintiff "who does not know the identities of the members of the proposed class to provide information about class members' desire to opt in could require the plaintiff to produce the very information that she s[eeks] to obtain through conditional certification and notice." *Johnson*, 802 F. Supp. 2d at 238 (quoting *Detho v. Bilal*, Civil Action No. H-07-2160, 2008 WL 2962821, at *3 (S.D. Tex. July 29, 2008)); *see also Heckler*, 502 F. Supp. 2d at 780 (finding that an interest requirement "puts the cart before the horse" and "does not make sense" because it would "essentially force plaintiffs or their attorneys to issue their own form of informal notice," undermining "a court's ability to provide potential plaintiffs with a fair and accurate notice."); *Wise v. Patriot Resorts Corp.*, C.A. No. 04-30091-MAP, 2006 WL 6110885, at *1 (D. Mass. 2006) ("[I]t is unrealistic to expect a party to consider whether to 'opt-in' to a collective action before that party is aware of the pendency of the action.").

Avon rightly points out that *Johnson* found this concern overblown in light of "the notice stage's light burden combined with any preliminary discovery a Court might allow." 802 F. Supp. 2d at 239. There, however, the court ultimately based its decision to require evidence of opt-in interest on the fact that the plaintiffs, former DJs at adult nightclubs, together had "more than twelve years of club experience and admit[ted] to knowing a number of VCG disc jockeys well enough to be aware of their dissatisfaction with the pay system." *Id.* at 239. Here, plaintiffs have not admitted that they know other DSMs in Puerto Rico, and there is nothing in the record to suggest that is the case. Indeed, as Avon's own declarants repeatedly assert, each DSM is effectively her own business, working in her specific district with relative independence. The job is different in character from those confined to a central location, such as a nightclub or a run-of-the-mill office, where employees have regular opportunities to interact. Despite plaintiffs' years of experience at Avon, there is simply no basis to presume that they are in a position to contact other

Rosselló v. Avon Products, Inc., Civil No. 14-1815 (JAG/BJM)                                    23

members of the proposed class in order to gauge their interest in joining.[15] Nor has there

been preliminary discovery of the sort contemplated in *Johnson*; at this stage, discovery has

been limited to the claims brought by plaintiffs themselves. Docket No 32. *Cf. Detho*,

2008 WL 2962821, at *3 (finding no "chicken and egg" problem where plaintiff failed to

provide evidence of opt-in interest even after court ordered defendant to provide identities of

former and current employers).

Second, the motivations underlying the interest requirement are unconvincing. Courts

have provided the following justification:

> [T]here is no guarantee that [similarly situated employees] will actually seek
> to join the lawsuit. And, if [they] were to decline to opt in to the case, no
> purpose would have been served by "certifying" a collective-action "class"—
> the case ultimately would involve no one other than the plaintiff.
> Furthermore, if an FLSA plaintiff were required to show only that other
> potential plaintiffs exist . . . it would "render preliminary class certification
> automatic, as long as the Complaint contains the magic words: 'Other
> employees similarly situated.'"

*Johnson*, 802 F. Supp. 2d at 237 (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d

1159, 1165 (D. Minn. 2007)). While certainly there will be some cases in which conditional

certification turns out to have been a waste of time, I question the frequency of such an

occurrence. It is not reasonable to assume that similarly situated employees will regularly

decline to join in a meritorious claim; as for non-meritorious claims, defendants may, and

should, move for dismissal rather than speculate that no opt-in plaintiffs will be forthcoming.

Nor is it realistic to imagine that, absent an interest requirement, courts will be left rubber-

stamping complaints alleging the existence of similarly situated employees. The great

majority of courts demand that plaintiffs support conditional certification with evidence

beyond mere allegations. Whatever phrases plaintiffs insert into their complaints, they must

---

[15] This conclusion does not conflict with my finding that plaintiffs have personal knowledge of other DSMs' duties, hours worked, and classifications. It is one thing to say that employees—even dispersed employees like DSMs—are presumably aware of what their employer demands of others in the same position, how much work is required to meet those demands, and how their employer classifies that position. It is something else to say that such employees should be expected to possess their colleagues' contact information.

still provide a minimal factual basis for the claim that there are others similarly situated.

Lastly, an interest requirement would undermine the FLSA's broad remedial purpose. *Shipes*, 2012 WL 995362, at *9; *Reab*, 214 F.R.D. at 629. The FSLA is designed to vindicate the rights of employees, either individually or, when appropriate, collectively. Collective action is appropriate when there are employees "similarly situated" to the named plaintiffs. Plaintiffs here have shown that other Puerto Rico DSMs performed similar duties and were similarly classified as exempt by Avon. That is all they must show at this initial stage.

## V.    Content and Form of Notice; Scope of Discovery; Composition of Class

Avon raises a panoply of objections to the content of plaintiffs' proposed notice, the form of notice plaintiffs propose to employ, and the information plaintiffs request that the court order Avon to provide. The parties have agreed to attempt to resolve these issues between themselves should the court grant conditional certification. Some issues may nevertheless be resolved at this time.

First, plaintiffs' proposed notice is directed to Avon's DSMs in general, not merely to DSMs who work or worked in Puerto Rico, and plaintiffs seek discovery of contact information for the same broad class. I read this as a drafting error rather than a legitimate attempt to reach DSMs nation- or worldwide. In their complaint, plaintiffs refer to a "Puerto Rico collective class" composed of current or former DSMs in Puerto Rico. Compl. ¶ 44. Their motion is explicitly focused on DSMs employed in Puerto Rico. *See* Mot. 4, 7. *Cf. Lee*, 980 F. Supp. 2d at 768 (limiting conditional certification to a class of "service coordinators" despite plaintiffs' request for a class of all "non-supervisory, non-exempt employees," where plaintiffs' motion focused solely on service coordinators). And, of course, there can be no valid claim under Law 379 for any non-Puerto Rico DSMs. My recommendation that conditional certification be granted is limited to certification of a class of employees who worked as DSMs in Puerto Rico; plaintiffs have plainly failed to demonstrate that they are similarly situated to DSMs who work or worked in any other location.

Second, plaintiffs seek to define the class as encompassing all employees who

worked as DSMs during the six years prior to November 6, 2014, the start of this suit, while Avon argues that three years is the correct timeframe. Avon is correct; in requesting a six-year period, plaintiffs misread Law 379's statute of limitations. The prescriptive term is, unambiguously, three years from the end of employment. 29 L.P.R.A. § 250j(a). Plaintiffs note that an employee who no longer works for his employer when he initiates an action may recover for violations during the last three years of his employment—which last three years are likely more than three years removed from his bringing suit. *Id.* § 250j(c). That does not mean, however, that such an employee may *bring a claim* more than three years after his employment ends. Former DSMs who ceased their employment with Avon over three years before the relevant date have no valid Law 379 claim and may not opt in.

The same term is proper under the FLSA, which provides for a limitations period of two years unless the claim arises from a willful violation, in which case it is extended to three years. 29 U.S.C. § 255(a). Plaintiffs allege that Avon willfully violated the FLSA. Compl. ¶ 62. Though it is premature to make any finding as to willfulness, it is appropriate to conditionally define the FLSA class by reference to the longer possible period. *See Walker*, 870 F. Supp. 2d at 472 (stating that a three-year period is proper for notice where plaintiffs allege a willful violation); *Prescott*, 729 F. Supp. 2d at 370 ("At this stage of the certification process, justice is best served by notice reaching the largest number of potential plaintiffs, and I therefore employ the three years."); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542 (N.D. Cal. 2007) (declining to make a determination of willfulness but authorizing notice to potential plaintiffs employed in the last three years). There is thus, for now, no conflict between the FLSA and Law 379; all of plaintiffs' claims require a three-year notice period.[16]

The proposed notice should be amended accordingly. Though other issues remain, Avon does not object to providing plaintiffs with the names and mailing addresses of all

---

[16] Neither party has addressed whether the commencement of this suit tolled either the FLSA's or Law 379's statute of limitations for future opt-in plaintiffs. I take no position on this issue.

members of the properly formulated class. The court should order that this information be promptly disclosed and direct the parties to confer in good faith as to their lingering disagreements.

## CONCLUSION

For the above reasons, plaintiffs' motion for conditional certification should be **GRANTED IN PART**. The court should **ORDER** that (1) Avon promptly disclose the names and mailing addresses of all individuals employed as a District Sales Manager in Puerto Rico at any time during the three years prior to the filing of this suit, (2) the parties confer in an effort to resolve their ongoing disagreements, and (3) the parties jointly file an amended proposed notice by an appropriate date. Avon's motion to strike is **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within 14 days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 24th day of June, 2015.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge